**UNITED STATES DISTRICT COURT**

**EASTERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| ISIDRO CASTRO,<br><br>       Petitioner,<br><br>   v.<br><br><br>J. SOTO, Warden,<br><br>       Respondent. | Case No. 1:11-cv-00441-AWI-SKO-HC<br><br>ORDER SUBSTITUTING WARDEN J. SOTO AS RESPONDENT<br><br>FINDINGS AND RECOMMENDATIONS TO DISMISS AND DENY THE FIRST AMENDED PETITION FOR WRIT OF HABEAS CORPUS (DOC. 24), ENTER JUDGMENT FOR RESPONDENT, AND DECLINE TO ISSUE A CERTIFICATE OF APPEALABILITY<br><br>**OBJECTIONS DEADLINE:**<br>**THIRTY (30) DAYS AFTER SERVICE** |

    Petitioner is a state prisoner proceeding pro se and in forma pauperis with a petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254. The matter has been referred to the Magistrate Judge pursuant to 28 U.S.C. § 636(b)(1) and Local Rules 302 through 304. Pending before the Court is the first amended petition (FAP), which was filed on March 21, 2012. Respondent filed an answer on August 13, 2012. Although the time for filing a traverse has passed, no traverse has been filed.

    I.  <u>Jurisdiction and Order Substituting Respondent</u>

    Because the petition was filed after April 24, 1996, the

1

effective date of the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA), the AEDPA applies in this proceeding.  <u>Lindh v. Murphy</u>, 521 U.S. 320, 327 (1997); <u>Furman v. Wood</u>, 190 F.3d 1002, 1004 (9th Cir. 1999).

The challenged judgment was rendered by the Superior Court of the State of California, County of Kern (KCSC), located within the jurisdiction of this Court.  28 U.S.C. §§ 84(b), 2254(a), 2241(a), (d).  Petitioner claims that in the course of the proceedings resulting in his conviction, he suffered violations of his constitutional rights.  Accordingly, the Court concludes that it has subject matter jurisdiction over the action pursuant to 28 U.S.C. §§ 2254(a) and 2241(c)(3), which authorize a district court to entertain a petition for a writ of habeas corpus by a person in custody pursuant to the judgment of a state court only on the ground that the custody is in violation of the Constitution, laws, or treaties of the United States.  <u>Williams v. Taylor</u>, 529 U.S. 362, 375 n.7 (2000); <u>Wilson v. Corcoran</u>, 562 U.S. -, -, 131 S.Ct. 13, 16 (2010) (per curiam).

An answer was filed on behalf of Respondent B. M. Cash, who was the warden at the California State Prison at Los Angeles County (CSP-LAC), where Petitioner was incarcerated when the petition and answer were filed.  Respondent had custody of Petitioner at the time the petition was filed.  (Doc. 32 at 8.)  Petitioner thus named as a respondent a person who had custody of Petitioner within the meaning of 28 U.S.C. § 2242 and Rule 2(a) of the Rules Governing Section 2254 Cases in the United States District Courts (Habeas Rules). <u>See</u>, <u>Stanley v. California Supreme Court</u>, 21 F.3d 359, 360 (9th Cir.

2

1994).  The Court has jurisdiction over the person of the
Respondent.

However, the official website of the California Department of
Corrections and Rehabilitation (CDCR) reflects that the warden at
CSP-LAC is now J. Soto.[1]  Accordingly, it is ORDERED that J. Soto,
Warden of CSP-LAC, is SUBSTITUTED as Respondent pursuant to Fed. R.
Civ. P. 25.[2]

II.  Procedural and Factual Summary

A.  Procedural Background

Petitioner was convicted at a jury trial of first degree
burglary in violation of Cal. Pen. Code § 460(a) (count 1), forcible
oral copulation in violation of Cal. Pen. Code § 288A(c) (count 2),
and the misdemeanors of battering a cohabitant in violation of Cal.
Pen. Code § 243(e)(1) (lesser included offense of count 3) and
violating a court order in violation of Cal. Pen. Code § 273.6(a)
(count 4).  People v. Isidro Castro, Jr., no. F056849, 2010 WL
27313, *1 (Jan. 7, 2010) (unpublished).  The jury also made various
findings on additional allegations: the jury found true the
allegation that appellant committed the oral copulation during the
commission of a residential burglary within the meaning of Cal. Pen.

---

[1] The Court may take judicial notice of facts that are capable of accurate and
ready determination by resort to sources whose accuracy cannot reasonably be
questioned, including undisputed information posted on official websites.  Fed. R.
Evid. 201(b); United States v. Bernal-Obeso, 989 F.2d 331, 333 (9th Cir. 1993);
Daniels-Hall v. National Education Association, 629 F.3d 992, 999 (9th Cir. 2010).
The address of the official website for the CDCR is http://www.cdcr.ca.gov.

[2] Fed. R. Civ. P. 25(d) provides that when a public officer who is a party to a
civil action in an official capacity dies, resigns, or otherwise ceases to hold
office while the action is pending, the officer's successor is automatically
substituted as a party. It further provides that the Court may order substitution
at any time, but the absence of such an order does not affect the substitution.

Code § 667.61(e)(2), but it found not true the separate allegation that during the residential burglary he intended to commit oral copulation within the meaning of Cal. Pen. Code § 667.61(d)(4).  The jury found not true an allegation that appellant entered the victim's apartment intending to commit oral copulation or felony abuse of an intimate partner, but it found true an allegation that appellant moved from the bedroom to the living room with that intent.  (Id.)

Petitioner was sentenced on December 4, 2008, to seventeen years to life in state prison. (LD 9, 1 CT 271-74.)[3]  On January 7, 2010, the Court of Appeal of the State of California, Fifth Appellate District (CCA) affirmed the judgment on direct appeal. (LD 4.)  On March 18, 2010, the Supreme Court of the State of California (CSC) summarily denied Petitioner's petition for review. (FAP, doc. 24 at 7; LD 6.)  A petition for writ of habeas corpus raising a claim of ineffective assistance of counsel was denied by the CSC on February 22, 2012.  (LD 7, LD 8.)  Petitioner filed his initial petition here and initiated the present proceeding on March 16, 2011.

B.  Factual Summary

In a habeas proceeding brought by a person in custody pursuant to a judgment of a state court, a determination of a factual issue made by a state court shall be presumed to be correct; the petitioner has the burden of producing clear and convincing evidence to rebut the presumption of correctness.  28 U.S.C. § 2254(e)(1); Sanders v. Lamarque, 357 F.3d 943, 947-48 (9th Cir. 2004).  This presumption applies to a statement of facts drawn from a state

---

[3] "LD" refers to documents lodged by Respondent with the answer.

4

appellate court's decision.  <u>Moses v. Payne</u>, 555 F.3d 742, 746 n.1 (9th Cir. 2009).

The following statement of the facts is taken from the opinion of the CCA in <u>People v. Isidro Castro, Jr.</u>, case number F056849, filed on January 7, 2010:

STATEMENT OF THE CASE
...

Prior to trial, the prosecution made a motion to allow impeachment of appellant, if he chose to testify, with evidence relating to prior convictions. After discussion on the matter, the trial court ruled that appellant could be impeached with the May 2001 felony conviction (evading the police) and the December 2007 misdemeanor conviction (assault with a deadly weapon).
...

FACTS

Appellant and S.C. dated for a year, were engaged, and lived together for about three weeks. However, there were times when the relationship turned violent. At trial, S. testified about three uncharged incidents of domestic violence.

The first occurred on April 23, 2008, when appellant accused S. of cheating on him while she was driving near his grandmother's house. S. stopped the car, appellant tried to kiss her, and as she pushed him away, he bit her lip. When S. restarted the car, appellant picked up a medicine bottle and broke it against the passenger window. He also smashed the windshield with his feet.

On a later occasion, appellant and S. were fighting over money and accusations of infidelity. Appellant threw a television remote control at S., but missed her, and they got into a fight. When S. asked appellant how he would feel if she died, appellant went into the kitchen, got a knife and held it against her throat. S. was numb. Appellant then threw the knife down and said that he was sorry and that he loved her.

The third incident occurred when appellant and S. were staying at a hotel. Appellant was on the telephone with an

attorney and S. got on the telephone at the attorney's request. Appellant became angry and left the hotel room. When he returned, he got back on the phone with the attorney and ended the call abruptly. Appellant accused S. of trying to send him to jail; she denied it, saying that she was trying to help him. Appellant pushed her and she fell down near the sink. He forced S. into the bathroom and slapped her face. S. started crying, and appellant then began slamming his own head against the wall, and apologized to S.

On cross-examination, S. admitted that she once broke appellant's nose during a fight in her car. She also admitted that on another occasion, she drove her car over appellant's foot but said it was an accident.

S. eventually broke up with appellant and obtained a restraining order against him.

Early on the morning of June 22, 2008, S. was awakened by the sound of banging on her bedroom window. She ran into the living room and began to dial 911. She heard the window break, and ran back into the bedroom before she completed the call. She saw appellant standing there. The glass from the bedroom window was all over the bed. There also was a beer can lying on its side, spilling beer all over the bed. The window screen, which was bent and torn, also was inside the bedroom.

S. testified that she was half asleep and her "mind wasn't working." She started to clean up the glass and told appellant to leave, but he refused and got angry. Appellant asked her why she did not want to be with him anymore, and he pushed her against a wall and began to kiss her neck. S. told appellant "over and over to stop." She managed to push appellant away and began to clean up the broken glass. Appellant told S. to leave the mess until the morning, but S. again told appellant to leave.

Appellant then grabbed S. by the back of her head and arms, dragged her into the living room, and forced her down on the couch. Appellant was really mad and he kept asking S. why she left him. He then removed his pants, and ordered S. to suck his penis. S. refused, again telling appellant to leave. Appellant slapped S.'s face and called her a bitch and a slut. He pushed her head towards his lap and forced his penis into her mouth. After forcing S. to

6

orally copulate him for a few minutes, appellant threw her to the floor, said he did not love her, and told her to take a shower. S. complied because she "felt disgusted."

As S. went to the bathroom, appellant remained in the living room, smoking a cigarette. S. did not call the police at this point because she had hidden her cellular telephone after seeing appellant in the apartment, and she did not call anyone because she feared that appellant would have beaten her and broken the telephone if he caught her doing so. While S. was still in the bathroom, appellant came in and tried to get in the shower with her. Appellant allowed S. to get out of the shower only after she promised to remain just outside the bathroom while he showered.

After appellant finished showering, he and S. returned to the living room, and he suggested that they get back together. S. told appellant that she just wanted to go to sleep. She got a blanket and pillows from the bedroom and laid them on the living room floor. Appellant, who was naked because he just got out of the shower, then lay down on the floor and told S. he wanted her to suck his penis again. S. said, "no, please, no." Appellant eventually fell asleep. At that point, S. retrieved her telephone and sent the following text to her mother, "Help, call the police, he is here, 2605 Mt. Vernon." She also called 911.

S.'s mother, Pamela C., received the text message at 6:55 a.m. and knew that her daughter was referring to appellant. Pamela called 911 and told the 911 operator that she was heading to her daughter's apartment and requested that someone be sent to the apartment. She arrived at the apartment complex and waited until the sheriff's deputy came. She then led the sheriff's deputy to S.'s apartment. A wooden gate in front of the apartment was padlocked, but Pamela had a key to the lock. Before Pamela could unlock the gate, S. opened it, and let her mother and the deputy enter. When the deputy entered the apartment, he found appellant asleep on the living room floor, his naked body covered by a blanket. The deputy also could see that the bedroom window was broken and a bent window screen was inside the bedroom. The deputy observed that S. had red marks on the right side of her neck, below her jaw.

7

At trial, Detective Herman Caldas also provided expert testimony on Battered Women's Syndrome. Caldas described the "cycle of violence," where tension builds up in a relationship and results in violence, after which the abuser then apologizes, and then the cycle starts over again. He also explained that victims of domestic violence may not report abuse and often do not leave their abuser because of guilt, shame, belief that the abuser will change, or fear of retribution.

Appellant testified in his own defense. The gist of his testimony was that the sex was consensual. With respect to the prior alleged incidents of abuse, appellant denied that he ever hit S. in the face or ever threatened her with a knife. He said that S. once grabbed a knife during an argument but he took it from her without further incident.

On cross-examination, appellant admitted that he had been convicted of two felonies—evading the police in May 2001 and auto theft in July 2002. Appellant also admitted that he was convicted for misdemeanor assault with a deadly weapon in December 2007. Appellant further admitted that he cheated on S. with other women. He also admitted that he was shot with a Taser gun during the April 23, 2008 incident when the police officers were called to his grandmother's house because of a report of domestic violence.

People v. Isidro Castro, Jr., no. F056846, 2010 WL 27313 at *1-*3 (Jan. 7, 2010).

III.   Instruction regarding Impeachment

Petitioner argues he suffered a due process violation when the trial court erred in instructing the jury pursuant to CALCRIM 316 that if the jury found that a witness had committed a prior felony, it could be used only in evaluating the credibility of the witness. Petitioner contends that giving the instruction was error because the trial court had ruled that with the exception of Petitioner's

8

prior convictions of assault with a deadly weapon and evading law

enforcement, Petitioner's prior convictions were excluded for the

purpose of impeaching Petitioner's testimony; yet much other

evidence of Petitioner's prior misconduct was introduced under Cal.

Evid. Code § 1109 to show Petitioner's propensity to commit acts of

domestic violence.  In light of CALCRIM 316, the jury could have

considered this other evidence for an improper purpose, namely, to

evaluate Petitioner's credibility, even if it did not reflect on his

dishonesty and moral turpitude.  Petitioner contends that the

improper impeachment was a misapplication of state law that violated

a liberty interest and thus constituted a violation of due process

of law.

> A.   <u>Standard of Decision and Scope of Review</u>

Title 28 U.S.C. § 2254 provides in pertinent part:

> (d) An application for a writ of habeas corpus on
> behalf of a person in custody pursuant to the
> judgment of a State court shall not be granted
> with respect to any claim that was adjudicated
> on the merits in State court proceedings unless
> the adjudication of the claim—
>
> (1) resulted in a decision that was contrary to,
> or involved an unreasonable application of, clearly
> established Federal law, as determined by the
> Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an
> unreasonable determination of the facts in light
> of the evidence presented in the State court
> proceeding.

Clearly established federal law refers to the holdings, as

opposed to the dicta, of the decisions of the Supreme Court as of

the time of the relevant state court decision.  <u>Cullen v. Pinholster</u>, - U.S. -, 131 S.Ct. 1388, 1399 (2011); <u>Lockyer v. Andrade</u>, 538 U.S. 63, 71 (2003); <u>Williams v. Taylor</u>, 529 U.S. 362, 412 (2000).

A state court's decision contravenes clearly established Supreme Court precedent if it reaches a legal conclusion opposite to, or substantially different from, the Supreme Court's or concludes differently on a materially indistinguishable set of facts.  <u>Williams v. Taylor</u>, 529 U.S. at 405-06.  A state court unreasonably applies clearly established federal law if it either 1) correctly identifies the governing rule but applies it to a new set of facts in an objectively unreasonable manner, or 2) extends or fails to extend a clearly established legal principle to a new context in an objectively unreasonable manner.  <u>Hernandez v. Small</u>, 282 F.3d 1132, 1142 (9th Cir. 2002); see, <u>Williams</u>, 529 U.S. at 407.  An application of clearly established federal law is unreasonable only if it is objectively unreasonable; an incorrect or inaccurate application is not necessarily unreasonable.  <u>Williams</u>, 529 U.S. at 410.  A state court's determination that a claim lacks merit precludes federal habeas relief as long as fairminded jurists could disagree on the correctness of the state court's decision.  <u>Harrington v. Richter</u>, 562 U.S. -, 131 S.Ct. 770, 786 (2011).  Even a strong case for relief does not render the state court's conclusions unreasonable.  <u>Id.</u>  To obtain federal habeas relief, a

state prisoner must show that the state court's ruling on a claim was "so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." Id. at 786-87.  The § 2254(d) standards are "highly deferential standard[s] for evaluating state-court rulings" which require that state court decisions be given the benefit of the doubt, and the Petitioner bear the burden of proof. Cullen v. Pinholster, 131 S.Ct. at 1398.  Further, habeas relief is not appropriate unless each ground supporting the state court decision is examined and found to be unreasonable under the AEDPA. Wetzel v. Lambert, --U.S.--, 132 S.Ct. 1195, 1199 (2012).

In assessing under section 2254(d)(1) whether the state court's legal conclusion was contrary to or an unreasonable application of federal law, "review... is limited to the record that was before the state court that adjudicated the claim on the merits." Cullen v. Pinholster, 131 S.Ct. at 1398.  Evidence introduced in federal court has no bearing on review pursuant to § 2254(d)(1). Id. at 1400. Further, 28 U.S.C. § 2254(e)(1) provides that in a habeas proceeding brought by a person in custody pursuant to a judgment of a state court, a determination of a factual issue made by a state court shall be presumed to be correct; the petitioner has the burden of producing clear and convincing evidence to rebut the presumption of correctness.  A state court decision on the merits based on a factual determination will not be overturned on factual grounds

unless it was objectively unreasonable in light of the evidence presented in the state proceedings.  <u>Miller-El v. Cockrell</u>, 537 U.S. 322, 340 (2003).

　　With respect to each claim, the last reasoned decision must be identified to analyze the state court decision pursuant to 28 U.S.C. § 2254(d)(1).  <u>Barker v. Fleming</u>, 423 F.3d 1085, 1092 n.3 (9th Cir. 2005); <u>Bailey v. Rae</u>, 339 F.3d 1107, 1112-13 (9th Cir. 2003).  Here, the decision of the CCA was the last reasoned decision on Petitioner's claims.  Where there has been one reasoned state judgment rejecting a federal claim, later unexplained orders upholding that judgment or rejecting the same claim are presumed to rest upon the same ground.  <u>Ylst v. Nunnemaker</u>, 501 U.S. 797, 803 (1991).  Therefore, this Court will look through the CSC's summary denial of review to the decision of the CCA.

　　B.　<u>The State Court's Decision</u>

　　The decision of the CCA on Petitioner's claim concerning the instructions is as follows:

CALCRIM No. 316

Appellant contends that the trial court erred in instructing the jury on the use of prior "misconduct" in evaluating his credibility.

Prior to trial, the trial court had ruled that appellant's credibility could be impeached with the May 2001 felony conviction for evading the police and the December 2007 misdemeanor conviction for assault with a deadly weapon. Appellant had testified, and on cross-examination, he had admitted to being convicted of these two crimes.

12

Subsequently, the trial court instructed the jury on the impact of prior misconduct in determining a witness's credibility with jury instruction, CALCRIM No. 316. As submitted to the trial court by the parties, the instruction stated, in relevant part: "If you find that a witness has committed a crime or other misconduct, you may consider that fact only in evaluating the credibility of the witness's testimony. The fact that a witness may have committed a crime or other misconduct does not necessarily destroy or impair a witness's credibility. It is up to you to decide the weight of that fact and whether that fact makes the witness less believable."

According to appellant, the problem with this instruction as given is that there was evidence of several other incidents of "misconduct," that the trial court had admitted for other purposes, but CALCRIM No. 316 allowed the jury to use this evidence for the improper purpose of impeachment. These other evidences included the uncharged prior incidents of domestic violence and also included character evidence such as appellant's admission that he cheated on S. with other women.

In reviewing a purportedly erroneous jury instruction, " 'we inquire "whether there is a reasonable likelihood that the jury has applied the challenged instruction in a way' that violates the Constitution.' [Citations.] In conducting this inquiry, we are mindful that ' "a single instruction to a jury may not be judged in artificial isolation, but must be viewed in the context of the overall charge."' [Citations.]" (*People v. Frye* (1998) 18 Cal.4th 894, 957, overruled in part on other grounds by *People v. Doolin* (2009) 45 Cal.4th 390 (internal citation and quotations omitted).) We presume that the jurors use intelligence and common sense when applying an instruction. (*People v. Bragg* (2008) 161 Cal.App.4th 1385, 1396.)

Here, there was no error in light of the actual instructions given. First, trial court (sic) departed from the normal instruction for CALCRIM No. 316 when it orally instructed the jury that: "If you find that the witness's [sic] committed a crime or other misconduct, mainly a misdemeanor, you may consider that fact only in evaluating the credibility of the witness's testimony. [¶] The fact that a witness may have committed a crime or other misconduct does not necessarily destroy or impair a

witness's credibility. It is up to you to decide the weight of that fact and whether that fact makes the witness less believable." (Italics added.)

Moreover, just immediately prior to this instruction, the trial court gave the following instruction: "During the trial, certain evidence was admitted for a limited purpose. You may consider that evidence only for that purpose and for no other. Specifically, I'm referencing Detective Caldas's testimony and prior acts of domestic violence [that] I'm going to refer to in greater detail in a little bit. There may have been some other. It escapes me right now, but those are the two main ones."

Later, with respect to the uncharged domestic violence evidence, the trial court instructed the jury that it could only use that evidence for count 3 (corporal injury on a former cohabitant). The trial court stated: "Do not consider this evidence for any other purposes. You don't say if he did it before, he did it this time. That's one of many factors in deciding Count 3 only."

Thus, the jury was instructed that it could not use evidence that was admitted for limited purposes, such as the evidence of domestic violence, to determine credibility. Moreover, the trial court had orally informed the jury that it should mainly consider the December 2007 misdemeanor conviction for assault with a deadly weapon to assist in determining appellant's credibility. Given our presumption that the jury follows the instructions that it was given, we conclude that there was no error when the trial court gave the modified CALCRIM No. 316.

People v. Isidro Castro, Jr., 2010 WL 27313 at *4-*5.

        C.   Analysis

The only basis for federal collateral relief for instructional error is that the infirm instruction or the lack of instruction by itself so infected the entire trial that the resulting conviction violates due process. Estelle v. McGuire, 502 U.S. 62, 71-72 (1991); Cupp v. Naughten, 414 U.S. 141, 147 (1973); see Donnelly v. DeChristoforo, 416 U.S. 637, 643 (1974) (noting that it must be

established not merely that the instruction is undesirable, erroneous or even "universally condemned," but that it violated some right guaranteed to the defendant by the Fourteenth Amendment).

The instruction may not be judged in artificial isolation, but must be considered in the context of the instructions as a whole and the trial record. Estelle, 502 U.S. at 72. In reviewing an ambiguous instruction, it must be determined whether there is a reasonable likelihood that the jury applied the challenged instruction in a way that violates the Constitution. Estelle, 502 U.S. at 72-73 (reaffirming the standard as stated in Boyde v. California, 494 U.S. 370, 380 (1990)). The Court in Estelle emphasized that the Court had very narrowly defined the category of infractions that violate fundamental fairness, and that beyond the specific guarantees enumerated in the Bill of Rights, the Due Process Clause has limited operation. Id. at 72-73.

The harmless error analysis applies to instructional errors as long as the error does not categorically vitiate all the jury's findings. Hedgpeth v. Pulido, 555 U.S. 57, 61 (2008) (citing Neder v. United States, 527 U.S. 1, 11 (1999) (quoting Sullivan v. Louisiana, 508 U.S. 275 (1993) concerning erroneous reasonable doubt instructions as constituting structural error)). In Hedgpeth v. Pulido, the Court cited its previous decisions that various forms of instructional error were trial errors subject to harmless error analysis, including errors of omitting or misstating an element of the offense or erroneously shifting the burden of proof as to an element. Hedgpeth, 555 U.S. 60-61. To determine whether a petitioner proceeding pursuant to § 2254 suffered prejudice from such an instructional error, a federal court must determine whether

15

1   the petitioner suffered actual prejudice by assessing whether, in

2   light of the record as a whole, the error had a substantial and

3   injurious effect or influence in determining the jury's verdict.

4   Hedgpeth, 555 U.S. at 62; Brecht v. Abrahamson, 507 U.S. 619, 638

5   (1993).  Thus, the alleged instructional error must have had a

6   substantial and injurious effect or influence in determining the

7   jury's verdict.  Brecht v. Abrahamson, 507 U.S. 619, 637 (1993);

8   Clark v. Brown, 450 F.3d at 905.

9        Here, the state court applied legal standards consistent with

10  the foregoing federal due process standards.  The state court viewed

11  the challenged instruction in light of the other instructions.

12  Consideration of the totality of the instructions supports the state

13  court's determination that the instructions were not misleading or

14  incorrect.  The credibility instruction was modified to focus the

15  jury on the misdemeanor conviction of assault, and the jury was

16  expressly reminded that it was up to them to weigh such evidence in

17  determining whether the witness was believable.  Consideration of

18  the other evidence of misconduct was expressly limited to the

19  cohabitation charge (count 3), on which Petitioner was acquitted and

20  instead suffered a misdemeanor battery charge.  The jury was

21  instructed it could not use the evidence of prior domestic

22  misconduct for any other purpose, and it was separately instructed

23  that it could consider evidence admitted for a limited purpose only

24  for the stated limited purpose.  (LD 12, 3 RT 512-3, 516-17, 531-

25  33.)  In light of the totality of the instructions given, the state

26  court properly concluded it was not reasonably likely the jury

27  applied the challenged instruction in a way that rendered the trial

28  fundamentally unfair.

As a general proposition, jurors are presumed to follow the instructions given.  See Weeks v. Angelone, 528 U.S. 225, 234 (2000).  Nothing in the record suggests it was inappropriate to rely on the presumption.  Although the jury had questions, there was no question regarding instructions or evidence relating to credibility or prior misconduct, and there was no other indication of confusion or uncertainty relating to credibility or prior misconduct.  (LD 12, 3 RT 597-632.)

Petitioner cites County Court of Ulster N.Y. v. Allen, 442 U.S. 140 (1979) (Ulster), holding that instructions containing mandatory presumptions based on evidentiary findings can violate due process by placing an improper burden on the defendant.  Id. at 157-58.  However, the Court in Ulster recognized that a permissive presumption, which allows but does not require the trier of fact to infer an elemental fact from proof of a basic one, and which places no burden of any kind on defendant, leaves the jury free to credit or reject an inference and does not shift burden of proof unless under the facts of the case there is no rational way the trier could make the connection permitted by the inference.  Id. at 157-58.  The instruction concerning the use of convictions for credibility determinations permitted the jury to find that the misconduct existed and to determine the weight, if any, to be given to it.  Thus, Ulster does not aid Petitioner.

Likewise, Petitioner's claim is not supported by Leary v. United States, 395 U.S. 6 (1969).  In Leary, the Court stated that a criminal statutory presumption regarding the knowledge element of a crime is unconstitutional "unless it can at least be said with

17

substantial assurance that the presumed fact is more likely than not to flow from the proved fact on which it is made to depend."  Id. at 36 (footnote omitted).  The instruction here did not embody a mandatory presumption, but rather instructed the jury that it "may" consider a witness's felony conviction or other crime or misconduct in determining his or her credibility; it also expressly placed the weighing of any fact in the hands of the trier of fact.

Finally, even if there was some ambiguity in the instructions, the record does not reflect that the instructions would have had a substantial and injurious effect or influence in determining the jury's verdict.  Petitioner correctly contends that credibility was a central issue in the case.  However, evidence independent of the impeachment evidence conflicted with Petitioner's version of the events, including the photographic evidence of the bent screen and broken bedroom window that contradicted the claim of entry through the front door at the victim's invitation; red marks on the side of S.'s neck, which were inconsistent with Petitioner's claim that he did not drag S. through the apartment or force her to perform oral copulation; and evidence that S. sent her mother a text message to call police after Petitioner fell asleep, which tended to show that the victim did not instigate any sex acts.  There was no evidence supporting Petitioner's suggestion that S. falsely accused him because she was angry at him for having sex with other women.

///

18

In sum, the instructions did not have a substantial or injurious effect or influence in determining the jury's verdict, and no instructional error rendered the trial fundamentally unfair. Accordingly, it will be recommended that Petitioner's claim of a violation of due process from the credibility instructions be denied.

## IV.   Insufficient Evidence

Petitioner argues that his right to due process was violated because the evidence is insufficient to support the burglary conviction. Petitioner contends there was no evidence that Petitioner had the specific intent to commit an act of forcible oral copulation when he entered the building or entered the living room, and thus there is insufficient evidence of burglary.  (FAP, doc. 24 at 35-39.)

### A.   The State Court's Decision

The pertinent portion of the CCA's decision is as follows:

CONVICTION FOR BURGLARY

Appellant also contends that there was insufficient evidence to support his conviction for burglary. He argues that there was no evidence that he had the specific intent to commit oral copulation, as opposed to some other felony, at the time he entered the living room.

" 'When considering a challenge to the sufficiency of the evidence to support a conviction, we review the entire record in the light most favorable to the judgment to determine whether it contains substantial evidence—that is, evidence that is reasonable, credible, and of solid value—from which a reasonable trier of fact could find the defendant guilty beyond a reasonable doubt.' [Citation.]

19

We determine 'whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.' [Citation.] In so doing, a reviewing court 'presumes in support of the judgment the existence of every fact the trier could reasonably deduce from the evidence.' [Citation.] 'This standard applies whether direct or circumstantial evidence is involved.' [Citation.]" (*People v. Avila* (2009) 46 Cal.4th 680, 701.)

"The crime of burglary consists of an act—unlawful entry—accompanied by the 'intent to commit grand or petit larceny or any felony.' (§ 459.) One may be liable for burglary upon entry with the requisite intent to commit a felony or a theft (whether felony or misdemeanor), regardless of whether the felony or theft committed is different from that contemplated at the time of entry, or whether any felony or theft actually is committed. [Citations.]" (*People v. Montoya* (1994) 7 Cal.4th 1027, 1041–1042, fn. omitted.) "[T]he jury need not unanimously decide, or even be certain, which felony defendant intended [to commit] as long as it finds beyond a reasonable doubt that he intended some felony." (*People v. Hughes* (2002) 27 Cal.4th 287, 351.)

"As a practical matter, if the defendant commits, or gives some indication of intending to commit, theft or a felony in a building shortly after entering it, no great inferential leap is necessary to conclude that the intent to commit the supporting offense existed at the time of entry. Thus, temporal or spatial proximity between the entry and the target or predicate crime are factors that may reasonably be considered by the jury when determining whether the requisite intent existed at the moment of entry, but they are not elements of the crime of burglary." (*People v. Kwok* (1998) 63 Cal.App.4th 1236, 1246.)

Here, appellant contends that even if the jury is correct that he committed forcible oral copulation, there was insufficient evidence to support the jury finding that he intended to commit forcible oral copulation at the time he dragged S. into the living room. However, it is permissible for a jury to infer that a defendant had the requisite intent to commit a felony if he commits the offense shortly after entering the room. (*People v. Kwok,*

20

*supra*, 63 Cal . App.4th 1245.) In this case, there is substantial evidence that he committed forcible oral copulation shortly after he entered the living room. S. testified that appellant grabbed her by the back of her head and arms and dragged her into the living room, where he forced her down on the couch. He then removed his pants, and ordered S. to suck his penis. S. refused, whereupon appellant slapped S.'s face and pushed her head towards his lap and forced his penis into her mouth. From this record, the jury could find or infer that appellant dragged S. into the living room with the intent to commit forcible oral copulation.

Appellant further contends that, as a matter of law, he could not be convicted for burglary even if he entered the living room with the intent to commit forcible oral copulation. Here, the jury found that appellant did not enter S.'s bedroom with the intent to commit a felony. Instead, the jury found that appellant acquired the intent to commit a felony when he entered the living room. Appellant argues that, based upon the jury's findings, he could not be convicted of burglary because there were no additional facts that would allow the movement from the bedroom to the living room to constitute burglary, such as an increase in the danger presented to the victim or a differing expectation of privacy between the bedroom and the living room.

In *People v. Sparks* (2002) 28 Cal.4th 71, 73, the California Supreme Court held that "[a] defendant's entry into a bedroom within a single-family house with the requisite intent can support a burglary conviction if that intent was formed only after the defendant's entry into the house." Section 459 defines burglary as the entry into "any ... room ... with intent to commit ... larceny or any felony." The California Supreme Court concluded that "the unadorned word 'room' in section 459 reasonably must be given its ordinary meaning." (*People v. Sparks, supra*, 28 Cal.4th at p. 87.)

In this case, a living room is a "room," and the jury found that appellant entered into that room with the intent to commit felony forcible oral copulation. Thus, the facts found by the jury are sufficient to convict appellant of burglary.

Appellant, however, states that he cannot be convicted of

burglary because the living room is not "a separate, individual dwelling place" distinct from the bedroom. (See *People v. Thomas* (1991) 235 Cal.App.3d 899, 906 fn. 2 (*Thomas*).) However, that observation by the *Thomas* court applied to a hypothetical case which involves multiple convictions for burglary. Here, appellant was charged with only one count of burglary. Thus, that observation (which was dictum and in a footnote in the *Thomas* case) is inapplicable to this case.

Appellant also contends that the purpose of the burglary statute, which is to protect citizens in their home and dwellings from unauthorized entry, see *Thomas, supra*, 235 Cal.App.3d at p. 906, does not support his conviction for burglary. According to appellant, he could be convicted for burglary only if the movement into the living room increased the danger to S. from the unauthorized entry. (See *People v. McCormack* (1991) 234 Cal.App.3d 253, 256.) Here, there was an increase in danger to S. from the movement into the living room because S. was forcibly moved away from a room that had possible escape path, since she could jump out of the broken window to escape from appellant or where it was more likely that any call for help could be heard by passersby.

Thus, appellant could be convicted for burglary based upon this record.

People v. Castro, 2010 WL 27313 at *5-*7.

B.   Analysis

To determine whether a conviction violates the constitutional guarantee of due process because of insufficient evidence, a federal court ruling on a petition for writ of habeas corpus must determine whether any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. Jackson v. Virginia, 443 U.S. 307, 319, 20-21 (1979); Windham v. Merkle, 163 F.3d 1092, 1101 (9th Cir. 1998); Jones v. Wood, 114 F.3d 1002, 1008 (9th Cir. 1997).

All evidence must be considered in the light most favorable to the prosecution.  *Jackson*, 443 U.S. at 319; *Jones*, 114 F.3d at 1008. It is the trier of fact's responsibility to resolve conflicting testimony, weigh evidence, and draw reasonable inferences from the facts, and it must be assumed that the trier resolved all conflicts in a manner that supports the verdict.  *Jackson v. Virginia*, 443 U.S. at 319; *Jones*, 114 F.3d at 1008.  The relevant inquiry is not whether the evidence excludes every hypothesis except guilt, but rather whether the jury could reasonably arrive at its verdict. *United States v. Mares*, 940 F.2d 455, 458 (9th Cir. 1991). Circumstantial evidence and the inferences reasonably drawn therefrom can be sufficient to prove any fact and to sustain a conviction, although mere suspicion or speculation does not rise to the level of sufficient evidence.  *United States v. Lennick*, 18 F.3d 814, 820 (9th Cir. 1994); *United States v. Stauffer*, 922 F.2d 508, 514 (9th Cir. 1990); see *Jones v. Wood*, 207 F.3d at 563.  The court must base its determination of the sufficiency of the evidence from a review of the record.  *Jackson* at 324.

The *Jackson* standard must be applied with reference to the substantive elements of the criminal offense as defined by state law.  *Jackson*, 443 U.S. at 324 n.16; *Windham*, 163 F.3d at 1101. However, the minimum amount of evidence that the Due Process Clause requires to prove an offense is purely a matter of federal law. *Coleman v. Johnson*, - U.S. -, 132 S.Ct. 2060, 2064 (2012) (per

23

curiam).  For example, under <u>Jackson</u>, juries have broad discretion to decide what inferences to draw and are required only to draw reasonable inferences from basic facts to ultimate facts.  <u>Id.</u>

Further, under the AEDPA, federal courts must apply the <u>Jackson</u> standards with an additional layer of deference.  <u>Coleman v. Johnson</u>, - U.S. -, 132 S.Ct. 2060, 2062 (2012); <u>Juan H. v. Allen</u>, 408 F.3d 1262, 1274 (9th Cir. 2005).  This Court thus asks whether the state court decision being reviewed reflected an objectively unreasonable application of the <u>Jackson</u> standard to the facts of the case.  <u>Coleman v. Johnson</u>, 132 S.Ct. at 2062; <u>Juan H. v. Allen</u>, 408 F.3d at 1275.  The determination of the state court of last review on a question of the sufficiency of the evidence is entitled to considerable deference under 28 U.S.C. § 2254(d).  <u>Coleman v. Johnson</u>, 132 S.Ct. at 2065.

Here, Petitioner essentially argues that the evidence did not necessarily show he specifically intended to commit forcible oral copulation, as distinct from another felony, when he dragged S. from her bedroom to the living room.  However, it was objectively reasonable for the state court to conclude that a rational trier of fact could infer the intent to commit forcible oral copulation from the strong evidence that Petitioner dragged the victim to the living room from the bedroom and then shortly afterwards forced her to engage in oral copulation.  Accordingly, it will be recommended that

24

Petitioner's due process claim of insufficiency of the evidence be denied.

Petitioner further contends it was an erroneous application of state law to convict him on the theory that he committed a burglary by entering the living room from the bedroom with the specific intent to commit oral copulation because the living room was not an area of greater privacy or security, and thus Petitioner's conduct was not within the legislative purpose in enacting the burglary statute.  (FAP, doc. 24 at 39-47.)  However, this contention is based on state law.  The state court expressly rejected Petitioner's argument that as a matter of law, his conduct could not amount to a burglary.

Federal habeas relief is available to state prisoners only to correct violations of the United States Constitution, federal laws, or treaties of the United States.  28 U.S.C. § 2254(a).  Federal habeas relief is not available to retry a state issue that does not rise to the level of a federal constitutional violation.  Wilson v. Corcoran, 562 U.S. — , 131 S.Ct. 13, 16 (2010); Estelle v. McGuire, 502 U.S. 62, 67-68 (1991).  Alleged errors in the application of state law are not cognizable in federal habeas corpus.  Souch v. Schaivo, 289 F.3d 616, 623 (9th Cir. 2002).  The Court accepts a state court's interpretation of state law.  Langford v. Day, 110 F.3d 1180, 1389 (9th Cir. 1996).  In a habeas corpus proceeding, this Court is bound by the California Supreme Court's interpretation of California law unless the interpretation is deemed untenable or a

veiled attempt to avoid review of federal questions. <u>Murtishaw v. Woodford</u>, 255 F.3d 926, 964 (9th Cir. 2001).

Here, there is no indication that the state court's interpretation of state law was associated with an attempt to avoid review of federal questions. Thus, this Court is bound by the state court's interpretation and application of state law. Petitioner's claim of state law error should be dismissed because it is not cognizable in this proceeding.

V. <u>Certificate of Appealability</u>

Unless a circuit justice or judge issues a certificate of appealability, an appeal may not be taken to the Court of Appeals from the final order in a habeas proceeding in which the detention complained of arises out of process issued by a state court. 28 U.S.C. § 2253(c)(1)(A); <u>Miller-El v. Cockrell</u>, 537 U.S. 322, 336 (2003). A district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant. Rule 11(a) of the Rules Governing Section 2254 Cases.

A certificate of appealability may issue only if the applicant makes a substantial showing of the denial of a constitutional right. § 2253(c)(2). Under this standard, a petitioner must show that reasonable jurists could debate whether the petition should have been resolved in a different manner or that the issues presented were adequate to deserve encouragement to proceed further. <u>Miller-El v. Cockrell</u>, 537 U.S. at 336 (quoting <u>Slack v. McDaniel</u>, 529 U.S. 473, 484 (2000)). A certificate should issue if the Petitioner shows that jurists of reason would find it debatable whether: (1) the petition states a valid claim of the denial of a constitutional

1  right, and (2) the district court was correct in any procedural

2  ruling.  Slack v. McDaniel, 529 U.S. 473, 483-84 (2000).

3      In determining this issue, a court conducts an overview of the

4  claims in the habeas petition, generally assesses their merits, and

5  determines whether the resolution was debatable among jurists of

6  reason or wrong.  Id.  An applicant must show more than an absence

7  of frivolity or the existence of mere good faith; however, the

8  applicant need not show that the appeal will succeed.  Miller-El v.

9  Cockrell, 537 U.S. at 338.

10     Here, it does not appear that reasonable jurists could debate

11 whether the petition should have been resolved in a different

12 manner.  Petitioner has not made a substantial showing of the denial

13 of a constitutional right.  Accordingly, it will be recommended that

14 the Court decline to issue a certificate of appealability.

15     VI.  Recommendations

16     In accordance with the foregoing analysis, it is RECOMMENDED

17 that:

18     1) Petitioner's state law claims be DISMISSED without leave to

19 amend;

20     2) The first amended petition for writ of habeas corpus be

21 DENIED;

22     3) Judgment be ENTERED for Respondent; and

23     4) The Court DECLINE to issue a certificate of appealability.

24     These findings and recommendations are submitted to the United

25 States District Court Judge assigned to the case, pursuant to the

26 provisions of 28 U.S.C. § 636 (b)(1)(B) and Rule 304 of the Local

27 Rules of Practice for the United States District Court, Eastern

28 District of California.  Within thirty (30) days after being served

27

with a copy, any party may file written objections with the Court and serve a copy on all parties.  Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations."  Replies to the objections shall be served and filed within fourteen (14) days (plus three (3) days if served by mail) after service of the objections.  The Court will then review the Magistrate Judge's ruling pursuant to 28 U.S.C. § 636 (b)(1)(C).  The parties are advised that failure to file objections within the specified time may result in the waiver of rights on appeal.  Wilkerson v. Wheeler, - F.3d -, -, no. 11-17911, 2014 WL 6435497, *3 (9th Cir. Nov. 18, 2014) (citing Baxter v. Sullivan, 923 F.2d 1391, 1394 (9th Cir. 1991)).

IT IS SO ORDERED.

Dated:   **December 8, 2014**            **/s/ Sheila K. Oberto**
                                          UNITED STATES MAGISTRATE JUDGE